Thank you, gentlemen. Okay, the next case for argument is MAG US v. Ontario Airport. MAG US Lounge Management, LLC v. Ontario International Airport So, is it Mr. Lee or Mr. T that's remote? It's Steven T. Okay, T. Okay, very well. Okay, and I know Mr. Bradley, you're here in person. I am. Please proceed. Thank you. And I'm going to try to reserve five minutes for a model, but I'll keep my eye on that. Okay, thank you. Good morning. May it please the Court. I'm Keith Bradley here for the plaintiff's appellant, which, if the Court is in mind, I'll just keep calling it MAG. Thanks. Good. You didn't call it MAG yet. We're good. So, the reason that the framers and the Congress established diversity of jurisdiction, the primary reason is that when an out-of-state party is litigating against the local, there is a perception that the local or state court system might be unfair. So, in this case, we have a U.K. company that decided to enter the U.S. market. They put their base in Illinois with incorporation in Delaware, and then they reached out and agreed to provide services to various institutes around the country, one of which was this local government authority in California. So that is essentially a joint venture of the San Bernardino County and the City of Ontario with presumably all the political connections that entails. The parties had a falling out, and if we do that in state court, that's going to be in the San Bernardino County Superior Court. This is exactly the kind of case that we should be entitled to litigate in federal court. But we have not managed to do that thus far, obviously. Before I go too far, I want to say a word about the standard of review. The parties have debated this, and I think that this case is reversible on de novo review and the various bits of it, and also on clear error for the various bits of it. Which isn't from your perspective. Exactly. Yeah, so I want to get it right. Okay. So I think it's de novo, and I want to draw the court's attention to Luthy Moss. We'll submit a 28-day letter about this, but it's 797 F. 2nd 747, in which this court said that the determination of domicile is clearly erroneous review. But I'm going to quote here, whether the district court properly allocated the burden of proof and the burden of production of evidence, and whether Moss carried his burden of production present questions of law reviewable de novo. So these collected issues that are associated with it are de novo review, and we don't think, of course, I don't think that OIA thinks. I think the district court invoked sort of the Dart-Cherokee framework and went beyond allegations into facts. And at that point, it's making determinations factually. So why wouldn't those be reviewed for clear error? So first off, Your Honor, I think that the invocation of Dart-Cherokee was erroneous in the first place in this context. And that, according to Lew, would be de novo. Second, I think neither side thinks that the district court actually determined Mag's domicile. And certainly, I think we can all agree that the question of whether OIA is a sovereign arm of the state would be a de novo question. Can I ask you just a few facts, if you will, regardless of which standard we're going to use here, just to be sure? Can you represent to us today that Mag USA or U.S. has a single member? Yes. Okay. And is that member Mag Holdings? Yes. And is Mag Holdings, does it only operate in Chicago, Illinois? I want to be very precise about this. Okay. Everybody is in Chicago except that since we filed our papers in this case, the leader has moved to the parent company in the U.K. Everybody else is still in Chicago and nowhere else in the U.S. Okay. All right. And Mag Holdings is incorporated in Delaware, right? Correct. You don't have anybody in California? Nope. Okay. All right. Thank you. So the move to the U.K. was after the suit was filed? Correct. And again, that is the president of Mag Holdings Inc., who was also the CEO of Mag LLC, which is the plaintiff here. It's not the company itself. It's that one person. Okay. I saw that in the 28-J reference about the other lawsuit. Is there anything in this record that reflects his moving to the U.K.? No. Did that occur after the briefing or a little bit before? After. In fact, it was after we filed, I believe after a briefing was complete in this case, and certainly after we had filed our opening papers and the collection of motions. I would submit to you also, Your Honor, that in the follow-on case that we submitted those 28-J letters about, the OIA suggested that maybe the domicile is in the United Kingdom. The principal place of business, I should say, is the United Kingdom. That is actually not even – that wouldn't make a difference, because it is certainly Mag Inc., Mag Holdings Inc., and Mag, the plaintiff, therefore, is a citizen of Delaware. So it's a U.S. citizen and a citizen of that state, which is sufficient for diversity jurisdiction, so long as it is not a citizen of California. And I would ask the Court – Well, it seemed that, you know, from the Syriatim orders from the District Court, that the District Court wanted a more complete and fuller presentation on this issue. And even in response to the second one, you're sort of giving crumbs. It's like three sentences in a declarative plaint. Can't you just do the full presentation, roll the bells and whistles, and just do this right? Well, Your Honor, time was certainly short. Now, I don't want to rest on that, because obviously one could ask for more time. But at the same time, you know, the companies in Illinois, what we provided was a declaration from the CEO who says, under penalty of perjury, I am the CEO – Of which company? He says he's the CEO of Mag Plaintiff. His declaration does not say his relationship to Mag Holdings, although there is public record already in the record showing he's the president of Mag Holdings. But he says, I am the CEO of Mag LLC, the plaintiff, and I have personal knowledge of the following. This company is headquartered and located at this address, this office building in Chicago. It has a single member. That single member, again, he's saying, I have personal knowledge that this single member has its principal place of business at this same office building. I submit that if you think about the way that even if he were not an officer of Mag Holdings, if you think about the relationship that a company has with its whole owner, right, it's a subsidiary, the CEO of Mag LLC, of course he's going to know where Mag Holdings has its principal place. Am I correct that nothing introduced by OIAA contradicted in any way the declaration from the president? That's absolutely right, Your Honor. I believe the only evidence that OIAA has introduced in the district court at all, or in this court, was its own formation document, which we also introduced. And it has never made an argument that Mag is incorporated in California. It has now made an argument that maybe it's domiciled in California. It has now made this argument that maybe it's got a principal place of business in the U.K. Was this Judge Wright's idiosyncratic approach to jurisdiction? What are we dealing with here? I mean, it doesn't seem like one more. Could you have done to, like my colleague suggested, to fill out the record? What's missing? Well, I don't want to speculate about Judge Wright's software here, but I've hypothesized that maybe we should have submitted a declaration that said, I have lunch with all the officers every day at this cafeteria in the basement of this office building. One of the things that I've noticed in this record, generally, is a constant refusal to give reasonable inferences in our favor. So we say, there's a single-member manager. And the district court and OIAA say, Aha! But you didn't say it was only a single member. We say, I have personal knowledge. Mr. Jones says, I have personal knowledge of where this place is incorporated. And the answer is, Aha! But you didn't tell me why he has personal knowledge. We submit a printout from the Delaware government that says, and also from the Illinois government that says, this company is incorporated in Delaware. And the answer is, Aha! But how am I to know that that's really from the Delaware government, aside from trial counsel submitting this request for judicial notice formally saying that's where it came from. So again and again, there's a refusal to draw inferences. And an insistence on trying to poke holes, which is the opposite, I think, of how one ought to do this. That's what I'm disagreeing with. I mean, I know the good judge well. He's a really nice person, and he's a smart judge. I just don't get it. I don't understand what the problem is here, and I'm hoping you can enlighten me. To be honest, we have never understood either. One thing I'll also point out to you as an example of this is, in my colleagues' papers, there's a suggestion. So this court, a few years ago, ruled on the case of a holding company that had been in existence 25 days before a lawsuit was filed. It didn't have any officers yet, because it was only 25 days old. And my colleague suggests that, well, since Meg Holdings is a holding company, maybe that standard should apply, and maybe it's principal place of business is wherever the board meets, which we didn't introduce that. But it was never introduced before, right? No. Well, and moreover, Meg, by the time this lawsuit was filed, Meg Holdings was 6 years old. It had 10 employees, although I should say that fact is not a direct proof that there were 10 employees. And, you know, it had multiple points of business. So, again, it's this refusal to draw the inferences and to say, well, here's this other hypothetical way that you have not foreclosed. Did you want to say? I thought you had said you wanted to say. Oh, yeah, thank you. Thank you. Very well. All right. Mr. T, you're teed up. Good morning. Thanks, Your Honor. My name is Stephen T, and I represent the Ontario International Airport Authority. I'll refer to the authority just for simplicity today. This morning I would just like to address specifically an argument that was raised by Meg in its reply brief. I have three issues that I want to address. All issues that were raised are argued by Meg in its reply brief. The first is the issue regarding its Section 1653 motion for amendment of its jurisdictional obligations. In its reply, Meg argues that it's proposed amendment to address defects in its complaints. Jurisdictional obligations should be allowed. The amendment would resolve any defects and render the appeal moot. Counsel, forgive me. I know you have a line you want to follow with respect to the reply brief, but I just want to ask you candidly. I've seen a lot of cases, and I've never seen one quite like this. What should Meg have done to show its citizenship? You've got a declaration of the CEO of Meg USA, President Meg Holdings, attesting principal place of business, state of incorporation. What's missing? I think this case is we heard about breadcrumbs, and that's what we got from Meg were breadcrumbs. In response to the two OSCs, breadcrumbs, call it cheese, whatever you want. Why is what was presented insufficient? Now, there are lots of substantive things you all can argue about. I understand that, but we're talking about jurisdiction here. You've got pleadings made. These things were put forward. They were not contradicted under almost any circumstances I can think of. This is more than enough to find that you have diversity in jurisdiction here. What am I missing? Well, it's clear that the district court raised both a factual attack, an attack on the factual sufficiency of the allegations as well as a facial attack. But in the context of what was missing, nobody contradicted the declaration of the president of Meg. The district court was not able to contradict them. He's the judge. There's no requirement for any contradiction. The burden of proof was on Meg to present facts supporting the diversity of jurisdiction they did. Well, they didn't quite. They provided breadcrumbs. What they didn't provide clearly was evidence supporting the citizenship of his parent company, Mac Holdings. What they provided was a declaration, a very thin declaration from Mr. Jones, and that declaration did not indicate Mr. Jones had any specific relationship with regard to Mac Holdings. Well, but it's in the record that Mr. Jones is also the president of Mac Holdings, is it not? It may not have been in that declaration, but it is in this record. There is a reference in one document that identifies Mr. Jones at one point in time as the president of Mac Holdings. Even if he's not, why isn't it sufficient proof that as CEO of Mac U.S., he says that my company has only one member? He presumably is in a very good position to know about that one member, and he says that it is organized and existing under the laws of Delaware, maintains a principal place of business in Chicago, and does not maintain any other principal places of business. That seems to button it down pretty well that the state of incorporation is Delaware, and the nerve center, the only principal place of business is Chicago, Illinois, so its citizenship is Delaware and Illinois. Why aren't we playing games with this further? I mean, I understand the workloads are high in the central district, and judges want to play games to get rid of cases, but why should we go along with this? I believe Mr. Jones did say all of the right things in that declaration. He did indicate the state of incorporation. He did indicate the principal place of business of Mac Holdings. Those certainly are the key facts that needed to be presented to the district court to establish citizenship of Mac Holdings, thus citizenship of Mac. What he didn't do, and what the district court identified as the point of concern, is he didn't establish competency to see those things. That's what the district court noted. But, Mr. Jones, no one contradicted that he was the president. I mean, this is, forgive me, this is silly. I really don't get this. This makes no sense at all. If you had come up with a declaration to the contrary and said this man is insane, he doesn't live there, here's some evidence, he's not the president, it's not incorporated somewhere else, I get that. But he said all the things that you just said. He said all the right things. The only question was, you know, you say he didn't show that he was what he had for breakfast and that he ate in the headquarters in Chicago. Who cares? Well, I disagree that that's our position, number one. We didn't talk about his breakfast. What we did know is he didn't indicate that. I'm just being facetious. My client, the airport authority would not have been in any position to provide evidence about Mr. Jones' status with regard to the whole thing. You were in a position to present evidence about your client, and frankly you played coyly with the district court and with this court. Where is there anything in California law that suggests that the state of California would be liable for the deaths of the airport authority? We didn't argue that there is any authority for that. What we did say to the district court. Then you're not, if that's not true, then you're not an arm of the state and you're a citizen of the state of California. And I'm sure this court's familiar with the record, and our client specifically advised the district court right off the bat in response to the very initial OSC that it believes it was a citizen of California. We did not argue otherwise. And yet the district court wouldn't take yes for an answer. I don't disagree with that. Why is it admitted? I'm sorry, did you hear that, Your Honor? Why don't you just stand up and admit that the evidence was sufficient and that this was just error? I'm not sure what evidence, Your Honor, you're referring to. So the only evidence that's there that this corporation was validly in Illinois or Delaware and not in California. And it's uncontroverted that the entity is not part of the state. And so why isn't there jurisdiction? Why don't you just say, yeah, we agree there is jurisdiction? Your Honor, the district court found insufficient evidence regarding Max's citizenship. So does the district court want us to send back a really sharply worded order telling that? I'm not speculating about what the district court would like. How about what my colleague suggested? I mean, you're a bright guy, obviously a well-trained lawyer. We need to have some efficiency in the system here. It would be really helpful if you just said and agreed you're in court. You know, there's enough here to find jurisdiction, and we agree that a simple statement from the court that there is jurisdiction is enough, and you can save your time or people can save their time. You can get to the real merits of the case. What's the matter with that? We had filed a motion, a 12-6 motion, on the question of Max's failure to comply with the Government Claims Act. That's a different issue. My point is what we didn't do is file a motion to dismiss based on diverse lack of diversity. That's right. I mean, all of this was originated with the district court, which then gave a series of orders asking for more and more and taking the position that it did. Why isn't there enough in this case that we should order this case reassigned on remand to another judge? I don't know that there's any basis for reassignment on remand. I'm not sure why there would be. Because there's a pattern in this case of misconstruing the evidence, asking for more, not accepting concessions. I mean, we're all here kind of flummoxed at what we're looking at and trying to figure out what was going on here. It suggests that maybe the judge has another agenda other than getting this right and maybe we should have somebody else take a fresh look at it. I don't have any indication that the judge has any other agenda other than it was trying to flesh out the question of diversity and jurisdiction. Other than that, it was trying to clear its docket of a case it didn't want. I understand that maybe this court's opinion. That's not something I'm going to speculate about. Okay. Do you have other comments that you'd like to make? You can tell the group is very receptive. No, Your Honor, I understand where the court's coming from. I don't think I need to present any further argument. I'm glad to answer further questions and discuss the issues, though. If there's nothing else, thank you. Thank you very much. Thank you, Mr. Teague. We appreciate it. All right. You're welcome to come up. If you wish or if you want to sit down, you can sit down. I do just have a couple things to say. One is, Judge Collins, we would say yes to that, your suggestion of a reassignment. We are. I hesitate. We've hesitated to ask for that for obvious reasons. But if you look at what the district court did in the second case that we testified to the court about, for example, it says that this court contemplated that the parties would refile in state courts so they could continue to engage in discovery while waiting for this court's decision, things like this. But I bring it up because I wanted to say if the court does issue that order, it would be important to resign both. We don't have jurisdiction. That's a good point. You don't. So, you know, good point. And then the second thing I wanted to say is we didn't talk about whether OIA is a sovereign. We do need a ruling from the court on that question because where we stand right now, the district court thinks it has decided that, so we face a risk of preclusion if you don't decide. Thank you. Other questions by my colleagues? All right. Thank you very much to both counsel for the argument. The case just argued is submitted.
judges: Kelly, SMITH, COLLINS